IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

FLOYD DOUGLAS NEWTON,

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civil No. 18-751(RMB)

**OPINION**

APPEARANCES:

POLONSKY & POLONSKY
By: Alan Polonsky, Esq.
512 S. White Horse Pike
Audubon, New Jersey 08106
    Counsel for Plaintiff Floyd Douglas Newton

REHM, BENNETT, MOORE, REHM & OCKANDER
ATTORNEYS AT LAW P.C., L.L.O.
By: Roger D. Moore, Esq.
3701 Union Drive, Suite 200
Lincoln, Nebraska 68516
    Counsel for Plaintiff Floyd Douglas Newton

SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
By: Eda Giusti, Special Assistant United States Attorney
300 Spring Garden Street, Sixth Floor
Philadelphia, Pennsylvania 19123
    Counsel for Defendant Commissioner of Social Security

**RENÉE MARIE BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Floyd Douglas Newton ("Plaintiff") of the final determination of the Commissioner of Social Security ("Commissioner"), which found that Plaintiff's Retirement Insurance Benefits should be reduced in accordance with the Social Security Act's Windfall Elimination Provision ("WEP"), 42 U.S.C. § 415(a)(7). The Commissioner found that Plaintiff, a former Army National Guard "Dual-Status Technician," was simultaneously receiving pension benefits from non-covered employment and that he did not qualify for the WEP's "uniform services" exception. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner and the case is ripe for review under 42 U.S.C. § 405(g). Because this Court finds that the Commissioner's interpretation of the statute and regulations is both correct and reasonable, the Commissioner's decision will be **AFFIRMED**.

**I.   BACKGROUND & PROCEDURAL HISTORY**

The material facts in this case are not in dispute. From 1972 to 2013, Plaintiff was a member of the United States Army Reserve. From 1980 to 2013, Plaintiff was employed as a "Dual-Status Technician" ("DST") in the Army National Guard. As suggested by the "dual-status" designation, DSTs are considered

both civilian federal employees and military members of the National Guard. As a condition of employment, Plaintiff was required to maintain his military grade and membership in the New Jersey Army National Guard, which meant that he was also required to participate in weekend training drills and wear his uniform while performing duties as a DST, including while performing work as a civilian technician. [See Record of Proceedings ("R.P"), at 17]. However, Plaintiff was paid as a federal civil service employee and qualified for a pension through the Civil Service Retirement System ("CSRS"). [Id.] As such, his position was considered "non-covered employment" and Social Security taxes were not withheld from his paycheck. [Id.]

In July 2013, Plaintiff reached the mandatory retirement age (60 years old) for the New Jersey Army National Guard. Due to his "dual-status" designation, Plaintiff was no longer able to maintain his federal civil service position as result of his honorable discharge from the military. [R.P., at 17]. Plaintiff receives two forms of retirement pay based on his service as a DST with the National Guard: (1) a pension paid by the Defense Finance an Accounting Service; and (2) an annuity paid by the Office of Personnel Management under the CSRS. [See R.P., at 33-35].

On June 2, 2015, Plaintiff submitted a Title II application for Social Security Retirement Insurance Benefits. [R.P., at 21-

27]. In a letter, dated June 12, 2015, the Social Security Administration ("SSA") notified Plaintiff that he qualified for retirement benefits, but that his benefits were subject to a reduction under the WEP. [See R.P., at 28-30]. On June 19, 2015, Plaintiff requested a reconsideration of the SSA's initial determination. [R.P., at 46]. In a letter, dated November 12, 2015, the SSA affirmed its prior determination that Plaintiff's benefits were subject to a reduction under the WEP. [R.P., at 47-51]. On November 19, 2015 Plaintiff requested a hearing before an Administrative Law Judge (an "ALJ") regarding the SSA determination. [R.P., at 62].

On June 14, 2016, Plaintiff's hearing was held before Administrative Law Judge Kenneth Bossong. Although Plaintiff was informed of his right to representation, he appeared at the administrative hearing without counsel. At the hearing, Plaintiff argued that his benefits should not have been reduced under the WEP. In support of this argument, Plaintiff referenced the Eighth Circuit's decision in Petersen v. Astrue, 633 F.3d 633 (8th Cir. 2011), which held that National Guard DSTs qualify for the so-called "uniformed service" exception under the WEP. The ALJ explained to Plaintiff that he was bound to follow the guidance issued by the SSA, which advises that the Petersen holding should only to be applied to claimants residing in the Eighth Circuit. See Acquiescence Ruling 12-1(8), 77 Fed.

4

Reg. 51842-01 (Aug. 27, 2012), correction published 77 Fed Reg. 54646-01 (September 5, 2012), effective August 27, 2012 (hereinafter "AR 12-1(8)"); SSA Program Operations Manual System ("POMS") – RS 00605.380.

Based upon the promulgated SSA interpretation and guidance, on August 17, 2017, the ALJ issued a decision affirming the prior SSA determinations; that is, that Plaintiff was entitled to retirement benefits, but they would be reduced under the WEP. On August 22, 2016, Plaintiff requested a review of the ALJ's decision by the Appeals Council. [R.P., at 200]. The Appeals Council denied Plaintiff's request for review on November 20, 2017, making the ALJ's decision as the Commissioner's final determination. [R.P., at 3]. Plaintiff now seeks this Court's review on appeal.

**II.  LEGAL STANDARD**

When reviewing a final decision of an ALJ with regard to social security benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Cons. Edison Co. v.

5

NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Our review of legal issues is plenary. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 431 (3d Cir. 1999). "Our role is not to impose upon the SSA our own interpretation of the Social Security legislation. Rather, because Congress has delegated to the Commissioner the responsibility for administering the complex programs, we must defer to her construction as long as it is reasonable and not arbitrary and capricious." Sanfilippo v. Barnhart, 325 F.3d 391, 393 (3d Cir. 2003)(citing Wheeler v. Heckler, 787 F.2d 101, 104 (3d Cir. 1986)).

## III. **DISCUSSION**

On Plaintiff's appeal, the primary issue before this Court is whether social security benefits for DSTs are subject to reduction under the WEP. As correctly explained by the United States Court of Appeals for the Eleventh Circuit, Congress enacted the WEP in 1983 "to eliminate the unintended 'double dipping' that accrued to workers who split their careers between

employment taxed for Social Security benefits ('covered') and employment exempt from Social Security taxes ('noncovered')." Stroup v. Barnhart, 327 F.3d 1258, 1259-60 (11th Cir. 2003).

The non-covered employment considered under the WEP is often federal employment that, prior to 1984, was exempt from Social Security taxes because federal employees contributed to the federal civil service pension which was "designed to take the place both of social security and a private pension plan for workers who remain in [federal] employment throughout their careers." See Petersen v. Astrue, 633 F.3d 633, 634 (8th Cir. 2011)(citing H.R.Rep. No. 98-25, at 22 (1983), reprinted in 1983 U.S.C.C.A.N. 219, 240). "Prior to the passage of the WEP, in calculating a beneficiary's primary insurance amount from the beneficiary's average monthly earnings, the Social Security Administration (SSA) did not consider whether the earnings came from covered or non-covered employment." Petersen, 633 F.3d at 634-635. As a result, beneficiaries who split their careers between covered and non-covered employment received both full Social Security benefits and whatever pension benefits were provided by the non-covered employment, during which the beneficiary had not paid Social Security taxes. To avoid "double dipping" in these situations, the WEP was enacted and requires a calculation of the Social Security benefit under a

modified formula to account for the beneficiary's receipt of alternative (civil service) pension benefits. Id.

At issue in this case is the "uniformed services" exception to the WEP. As set forth in 42 U.S.C. ¶ 415(a)(7)(A)(III), the WEP's modified formula is not meant to be used to reduce retirement benefits on the basis of "a monthly periodic payment… based wholly on service as a member of a uniformed service." The term, "member of a uniformed service," is not defined in the provision, but rather incorporates definitions from other sections of the U.S. Code, which encompass members of the Army National Guard. It is unsettled whether this language applies to National Guard DSTs, such as Plaintiff. Currently, there is a Circuit split on this issue, with the Eighth Circuit applying the exception for DSTs, and the Eleventh Circuit holding that the exception does not apply to DSTs. For the reasons that follow, this Court will adopt the holding of the Eleventh Circuit.

**A. National Guard Technician Act of 1968**

In 1968, Congress passed the National Guard Technician Act ("NGTA"), which created National Guard position of "military technician (dual status)." Pub. L. No. 90-486, § 2(1), 82 Stat. 755, 755-56, codified as 32 U.S.C. § 709. Under the statute, a DST is defined as a "Federal civilian employee" who is "assigned to a civilian position as a technician in the organizing,

8

administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issues to the Selected Reserve or the armed forces." 10 U.S.C. § 10216(a)(1).

The statute specifies that DSTs "shall be authorized and accounted for as a separate category of civilian employees," 10 U.S.C. § 10216(a)(2), and is both "an employee of the Department of the Army ... and an employee of the United States." 32 U.S.C. § 709(e); see also 5 U.S.C. § 5534 ("A Reserve of the armed forces or member of the National Guard may accept a civilian office or position under the Government of the United States ... and he is entitled to receive the pay of that office or position in addition to pay and allowances as a Reserve or member of the National Guard.").

As a required condition of employment, a Dual-Status Technician must maintain membership in the National Guard and hold the military grade specified for the position. Although DSTs are considered "civilian employees," they are required to wear their military uniform "appropriate for the member's grade and component of the armed forces" while "performing duties as a

military technician (dual status)." 10 U.S.C. § 10216(a)(1)(B); 32 U.S.C. § 709(b)(2-4).

**B. Interpretation of the Uniformed Services Exception**

It is well-settled that "[t]he first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Valansi v. Ashcroft, 278 F.3d 203, 209 (3d Cir. 2002)(quoting Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir. 2001)(internal citations omitted)). "Where the language of the statute is clear ... the text of the statute is the end of the matter." Steele v. Blackman, 236 F.3d 130, 133 (3d Cir. 2001). However, if the language of the statute is unclear, we attempt to discern Congress' intent using the canons of statutory construction. Ki Se Lee v. Ashcroft, 368 F.3d 218, 222 (3d Cir. 2004)(citing INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987)). If the tools of statutory construction reveal Congress' intent, that ends the inquiry. United States v. Cooper, 396 F.3d 308, 311 (3d Cir. 2005), as amended (Feb. 15, 2005)(citing Valansi, 278 F.3d at 208). If, on the other hand, the Court is unable to discern Congress' intent using tools of statutory construction, the Court generally defers to the governmental agency's reasonable interpretation. See generally, Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). With these principles in mind, this

Court must first examine the language of the uniformed services exception to ascertain whether its meaning is plain and unambiguous.

As set forth in the statute, the uniformed service exception applies to beneficiaries who receive pension benefits payments "based wholly on service as a member of a uniformed service (as defined in section 410(m) of this title) which is based in whole or in part upon his or her earnings for service which did not constitute… [covered employment]."

The relevant inquiry in this matter is "what it means to perform service wholly in one's capacity as a member of a uniformed service." See Martin v. Soc. Sec. Admin., Comm'r, 903 F.3d 1154, 1165 (11th Cir. 2018). This Court agrees with the Eleventh Circuit that "wholly" has a plain meaning in this context, and should be defined as "to the full or entire extent" or "to the exclusion of other things." See id. at 1164. The Eleventh Circuit explained:

> The critical issue is therefore how the word "wholly" interacts with the nature of the dual status technician position. By its plain meaning, "wholly" limits the payments covered by the uniformed services exception: even if dual status technician employment is essentially military, it is not subject to the uniformed services exception if it is not wholly military in nature. Accounting for all of the features of the dual status technician role, we find it difficult to conclude that a

> dual status technician wholly performs that role as a
> member of the National Guard.

See id. at 1166. (emphasis in original). This Court agrees with the reasoning set forth by the Eleventh Circuit. Accord Kientz v. Berryhill, 2018 WL 4538480, at *2 (D. Kan. Sept. 21, 2018)(adopting the Eleventh Circuit's holding from Martin).

In Petersen, the Eighth Circuit focused on the meaning of "service as a member of a uniformed service." But, as the Martin court persuasively noted, this analysis did not address the use of the word "wholly," which has special meaning in this context. Indeed, although DSTs undoubtedly perform a role that is military in nature, the Third Circuit has previously acknowledged that the role is not wholly military in nature. See Willis v. Roche, 256 F. App'x 534, 536 (3d Cir. 2007)(finding that a DST holds a position requiring performance of both military and civilian job duties)(emphasis added).

It seems that the "dual-status" designation was created for the explicit purpose of providing DSTs with a federal civil service pension for civilian work. In fact, the DST position was created "[t]o accommodate the civilian interests of these employees without intruding on the Guard's military and security needs, and to recognize by statute the special employee status that had evolved informally ... all Guard technicians, who had

previously been employees of the states, were declared to be federal employees, and were thereby afforded the benefits and rights generally provided for federal employees in the civil service." See New Jersey Air Nat. Guard v. Fed. Labor Relations Auth., 677 F.2d 276, 279 (3d Cir. 1982); DiLuigi v. Kafkalas, 584 F.2d 22, 24 (3d Cir. 1978)("Both [the] House and Senate Reports indicate that the technicians were to be treated insofar as possible like other federal employees covered by the civil service legislation").

Ultimately, this Court finds that the WEP's uniformed service exception does not apply to DSTs, such as Plaintiff. Because the language of the statute is clear and unambiguous, the Court finds no need to perform a Chevron analysis.[1]

**CONCLUSION**

For the foregoing reasons, the final determination of the Commissioner will be **AFFIRMED**. An Order consistent with this Opinion shall issue on this date.

DATED: March 29, 2019

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

---

[1] However, the Court notes that if it were to perform such analysis, it would also find that the Commissioner applied a reasonable interpretation of the statute.